

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD ALTOMARE, | Index No. |
| | (ECF Case) |
| Plaintiff, | |
| v. | **COMPLAINT** |
| WELLS FARGO SECURITIES, LLC; WELLS FARGO ADVISORS, LLC; WACHOVIA CORPORATION; WELLS FARGO & COMPANY; RICHARD SANDULLI; and RICHARD SILVA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Gerald Altomare, through his attorneys, Liddle & Robinson L.L.P., allege as follows:

## NATURE OF THE ACTION

1.  This is an action based on Defendants' age discrimination and based on *quantum meruit*. Defendants failed to give Mr. Altomare a promised promotion and terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law, and the New York City Human Rights Law.   Mr. Altomare is also entitled to compensation earned during his employment on the basis of *quantum meruit*.

2.  Plaintiff, Gerald Altomare, was employed by Defendants Wells Fargo Securities, LLC, Wells Fargo Advisors, LLC, Wachovia Corporation, and Wells Fargo & Company (collectively "Wachovia"), through themselves and through entities formerly known as Wachovia Capital Markets, LLC and Wachovia Securities, LLC.  Mr. Altomare was employed by Wachovia from February 2006 until he was terminated effective

August 14, 2008.   During that time, Mr. Altomare was qualified for his position and received excellent performance reviews.

3.     Mr. Altomare, who was fifty years old at the time of his termination, was subjected to constant ridicule by his supervisors, Defendants Richard Sandulli and Richard Silva, because of his age.   Messrs. Sandulli and Silva denied Mr. Altomare a promised promotion and terminated him based on his age.

4.     Wachovia and Messrs. Sandulli and Silva hired a significantly younger replacement to fill Mr. Altomare's position.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1367.

6.     The Court has personal jurisdiction over Wachovia because Wachovia regularly transacts business in New York and has offices in New York.

7.     Defendant Richard Sandulli is a New Jersey resident and works for Wachovia in New York.

8.     Defendant Richard Silva is a Connecticut resident and works for Wachovia in New York.

9.     Plaintiff filed a charge of discrimination on the basis of his age on November 20, 2008 with the Equal Employment Opportunity Commission ("E.E.O.C."). At the request of Mr. Altomare, the E.E.O.C. issued him a Notice of Right to Sue on October 22, 2009.  (Attached hereto as Exhibit A.)

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claim occurred in the Southern District of New York.

## THE PARTIES

11.     Plaintiff, Gerald Altomare, is a fifty-two year-old male with twenty years of experience in the financial industry. He was born on October 23, 1957. Mr. Altomare was employed by Wachovia from February 2006 until August 14, 2008 in their New York City office located at 375 Park Avenue, New York, New York. He currently resides in Franklin Lakes, New Jersey.

12.     Defendant Wells Fargo Securities, LLC ("WFS"), formerly known as Wachovia Capital Markets, LLC, is a Delaware limited liability company with its principal place of business located at 301 S. College Street, Charlotte, North Carolina. WFS is a licensed securities broker-dealer that regularly transacts business in the state of New York.

13.     Defendant Wachovia Securities LLC ("WS") is Delaware limited liability company with its principal place of business located at One North Jefferson Avenue, St. Louis, Missouri.   WS is a licensed securities broker-dealer that regularly transacts business in the state of New York.

14.     Defendant Wachovia Corporation ("WC") is a North Carolina corporation with its principal place of business located at One Wachovia Center, Charlotte, North Carolina. WC regularly transacts business in the state of New York.

15.     Defendant Wells Fargo & Company ("WFC") recently merged with WC and acquired all of WC's outstanding shares. WFC is a Delaware corporation with its

principal place of business located at 420 Montgomery Street, San Francisco, California. WFC regularly transacts business in the state of New York.

16. Defendant Richard Sandulli is a New Jersey resident and is employed by Wachovia in New York. Mr. Sandulli was a supervisor of Mr. Altomare's while Wachovia employed Mr. Altomare.

17. Defendant Richard Silva is a Connecticut resident and is employed by Wachovia in New York. Mr. Silva was a supervisor of Mr. Altomare while Wachovia employed Mr. Altomare.

## THE FACTS

18. Mr. Altomare was hired into The Strategic Solutions Group of Wachovia (the "Group") by its head, Richard Sandulli, in February 2006. At all times relevant, the Group consisted of approximately 20 employees.

19. Mr. Sandulli aggressively pursued Mr. Altomare in an attempt to hire him. They worked together at a previous employer and Mr. Sandulli was familiar with Mr. Altomare's high-level results.

20. Mr. Altomare originally informed Mr. Sandulli he was not interested in working for Wachovia because of the firm's inferior reputation in Mr. Altomare's field and because Mr. Altomare was in involved in several small business opportunities at the time.

21. Eventually, Mr. Sandulli convinced Mr. Altomare to join Wachovia by indicating Wachovia were attempting to alter their reputation and that the Group was an important part of the change. Mr. Sandulli also guaranteed Mr. Altomare would receive $1.4 million in compensation in his first year. Mr. Sandulli and Wachovia hired Mr. Altomare as Managing Director.

22.     When Mr. Sandulli hired Mr. Altomare, he indicated that, once Mr. Altomare became established in the Group, he would promote Mr. Altomare to co-head of the Group.

23.     During late 2005 and early 2006, Mr. Sandulli hired seven permanent employees into the Group, including Mr. Altomare, who were approximately fifty years of age or older. All of those hiring decisions were made by Mr. Sandulli without the support of the junior co-head of the Group, Richard Silva.

24.     Mr. Silva, who was in his late 30's, was opposed to the hiring decisions made by Mr. Sandulli. Mr. Silva referred to the older employees as "dinosaurs" and "Sandulli's mistakes." He referred to the Group's business of equity derivatives as a "young man's game." He said that the older employees did not belong in the Group and that they damaged the way the Group was perceived by the rest of Wachovia.

25.     Mr. Altomare did not interview with Mr. Silva or discuss the terms of his employment with Mr. Silva at any time prior to being hired by Wachovia.

26.     At some point after Mr. Altomare was hired, Mr. Silva convinced Mr. Sandulli to replace the older employees with younger ones. Subsequently, Defendants terminated or transferred all but one of the seven employees Mr. Sandulli hired over the age of 50 years old, including Mr. Altomare.

27.     The one remaining employee over the age of fifty years old is Bruce Dunn. In early 2007, Mr. Silva told Mr. Altomare that he wanted to terminate Mr. Dunn but could not because Mr. Dunn's reviewer, David Hanes, had given Mr. Dunn a perfect performance review in 2006.

28.     Since the time Defendants started taking action against the older employees, six employees of the Group over the age of 50 years old have been terminated or transferred and a similar number in their 20's and 30's have been hired.

29.     Messrs. Sandulli and Silva tried to force Mr. Altomare to resign from his position by creating an uncomfortable work environment and interfering with his ability to do his job.  Mr. Silva redirected Mr. Altomare's business to others, excluded him from meetings, denied him access to resources, undermined his credibility with senior management, and prevented the promotion to co-head of the Group that Mr. Sandulli promised Mr. Altomare when he was hired.

30.     Mr. Silva and Mr. Sandulli made numerous disparaging comments about Mr. Altomare's age.  On many occasions, Mr. Silva referred to Mr. Altomare and other older individuals as "old farts."

31.     When Mr. Altomare registered to take the Series 24 licensing exam, Mr. Silva told Mr. Altomare that he was too old to take the exam.

32.     On several occasions, Mr. Silva joked about Mr. Altomare wearing Depends, a product for incontinence, because of his age.  Mr. Altomare does not wear Depends or suffer from incontinence.  Despite this, during a golf outing, Mr. Silva said that Mr. Altomare could "pinch a loaf" and keep on playing in his Depends.  In another such instance, during a discussion about the summer dress code, he asked Mr. Altomare how his Depends fit under khakis.

33.     On numerous occasions, Mr. Silva and Mr. Sandulli referred to Mr. Altomare as the "old guy" and referred to others that Mr. Altomare worked with as the "old guys."

34.     On frequent occasions, Mr. Sandulli referred to Mr. Altomare as "Smeary". He used this nickname for Mr. Altomare to imply that he suffers from incontinence which Mr. Altomare does not.

35.     In addition, Mr. Silva and Mr. Sandulli made disparaging comments about Mr. Altomare's hair which is gray and thinning.   On many occasions, Mr. Sandulli suggested that Mr. Altomare should comb the hair on his back over his head to cover the bald spots.  On other occasions, Mr. Silva compared his own hair and the hair of younger employees in the Group to Mr. Altomare's hair in a disparaging manner.

36.     Because of the derogatory attitude about Mr. Altomare's age fostered by Messrs. Silva and Sandulli, other members of the Group also made age-based comments and references.  In one instance that occurred in approximately August 2007, a junior member of the Group, Keshiv Desai, joked about colostomies at Mr. Altomare's expense in an email sent to co-workers.  Mr. Altomare has never had a colostomy.

37.     The comments and attitude made Mr. Altomare so uncomfortable about his age that Mr. Altomare chose not to tell anyone in the Group about his fiftieth birthday which occurred on October 23, 2007.   Mr. Altomare kept quiet about his birthday despite the extraordinary coincidence that two other members of the Group celebrated their birthdays on that very same day with a party held in the office.

38.     Because of his age, Mr. Altomare was excluded from certain social events of the Group, including junkets arranged by Mr. Silva.  The junkets were sponsored by a contact of Mr. Silva in the insurance industry and included adult-oriented activities of a sexual nature.  Mr. Altomare was told by Mr. Silva that he was not invited because he was too old to keep up with these activities.

39.    Mr. Altomare performed his job well at all times and received a 2006 performance appraisal from Mr. Sandulli that rated his performance as "excellent."

40.    Mr. Sandulli, at Mr. Silva's urging, improperly rated his performance for 2007 at a lower level.   Messrs. Sandulli and Silva gave Mr. Altomate this unjustified performance rating in order to manufacture a pretext for Mr. Altomare's later termination. As a result, Mr. Sandulli only gave Mr. Altomare a performance rating of "good" despite the fact that he created the largest pipeline of new business in the Group, including over $2 billion in loans and product innovations.

41.    One loan commitment in particular was budgeted to generate approximately $16 million in annual revenue for the firm.  This mandate was, by far, the largest one ever received by the Group.

42.    Mr. Altomare was also responsible for developing several products for the Group to sustain its future profitability.  In this role, Mr. Altomare conceived and developed several new products including an annuity hedging application for insurance companies, a fund-linked convertible preferred share to create investment income, a coupon-generating defeasance note to facilitate hedge fund investments, and a static collateralized fund obligation to provide term financing.  The latter product was even the subject of a patent application by Wachovia that lists Mr. Altomare as the inventor.

43.    In February 2008, Mr. Sandulli agreed to promote Mr. Altomare to co-head of the Group as he originally promised when he hired Mr. Altomare.  However, Mr. Silva told Mr. Altomare that he strongly opposed promoting him and that he would not let Mr. Altomare become co-head of the Group.

44.     Mr. Silva convinced Mr. Sandulli and Wachovia not to promote Mr. Altomare to co-head of the Group as he had initially promised.   Defendants refused to promote Mr. Altomare based on his age.

45.     On May 13, 2008, Mr. Silva informed Mr. Altomare that he was being terminated under the pretext that his position was being eliminated along with others at the firm.  Mr. Altomare's last day as a Wachovia employee was August 14, 2008.

46.     Defendants used this same pretext in the past to justify wrongfully terminating an individual named John Service from the Group.   While perhaps not an instance of age-based discrimination, Mr. Service was wrongfully terminated and falsely informed that his position was being eliminated.  In fact, before terminating Mr. Service, Mr. Silva had already arranged to replace him with an individual Mr. Silva preferred, Peter Horowicz.  Upon the termination of Mr. Service, Mr. Horowicz promptly assumed Mr. Service's position which had not been eliminated at all.   Both Mr. Service and Mr. Horowicz reported directly to Mr. Altomare.

47.     The actions of Defendants demonstrate their willingness to falsely claim that a position was being eliminated in order to conceal a wrongful termination and their conduct in doing so was willful.

48.     Defendants made other decisions based on age as well including hiring decisions.  In November 2007, Mr. Altomare gave Mr. Silva the résumé of a highly qualified fifty-three year-old female, Barbara-Ann Matthias.  She was an excellent candidate for a marketing position that the Group needed to fill.  Mr. Silva responded that she was "too old" and chose not to interview her for the position.

49.     In addition, Defendants hired individuals over the age of fifty years old on a temporary basis solely because of their age.  One such employee in the Group, James Lloyd, age 58, was employed as a temporary employee at Wachovia for almost three years.  During that time, Mr. Silva denied his requests to become a permanent employee repeatedly while less-qualified individuals under the age of 35 years old were hired as permanent employees into similar positions.

50.     Mr. Altomare has been replaced in part by Mr. Silva and in part by a new employee, Dana Bartow, who is approximately 26 years old.

51.     At the time Mr. Altomare was hired in February 2006, the average age of the employees in the Group was approximately 40 years old.  In May 2008, despite the passing of more than two years, the average age had dropped to approximately 35 years old.  In February 2006, the percentage of permanent employees in the Group over the age of 48 years old was approximately 28%.  In May 2008, a little more than two years later, the percentage of permanent employees over the age of 50 years old was approximately 5%.

52.     There were no credible business reasons or other reasons to eliminate Mr. Altomare's position or to terminate him.  Nor was there a credible business reason to terminate or transfer the other older employees in the Group.

53.     During his employment, Wachovia compensated Mr. Altomare with a base salary of $200,000 and an annual bonus.  The annual bonus Mr. Altomare received from Wachovia averaged approximately $950,000 per year.

54.     Mr. Altomare did not receive his annual bonus for the portion of 2008 that he was employed by Wachovia.

## FIRST CAUSE OF ACTION
### (Violation of the Age Discrimination in Employment Act against Wachovia)

55.    Each of the foregoing allegations is incorporated herein by reference.

56.    At all relevant times, Plaintiff was an "employee" of Wachovia under 29 U.S.C. § 630(f) of the ADEA.

57.    Upon information and belief, each of the Wachovia Defendants are "employers" subject to the provisions of the ADEA under 29 U.S.C. §630(b).

58.    By their actions detailed above, Wachovia denied Plaintiff a promised promotion and terminated him on the basis of his age in violation of the ADEA.

59.    As a result of the discrimination described above, Plaintiff has suffered a substantial loss of earnings and benefits and will continue to suffer such losses in the future.  Accordingly, Wachovia is liable to Plaintiff for both back pay and front pay in amounts yet undetermined, plus attorneys' fees, interest and costs.

60.    Wachovia's conduct in discriminating against Plaintiff on the basis of his age was willful, entitling Plaintiff to an additional sum of liquidated damages pursuant to 29 U.S.C. § 626(b) of the ADEA.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Age Discrimination Under the New York State Human Rights Law against all Defendants)

61.    Each of the foregoing allegations is incorporated herein by reference.

62.    At all relevant times, Plaintiff was an "employee" of Wachovia under the New York State Human Rights Law, N.Y. Exec. Law § 292(6).

63.    Upon information and belief, each of the Wachovia Defendants are "employers" under the New York State Human Rights Law, N.Y. Exec. Law § 292(5).

64.     By its actions detailed above, Defendants denied Plaintiff a promised promotion and terminated him on the basis of his age in violation of Section 296 of the New York State Human Rights law.  Defendants Sandulli and Silva aided and abetted Wachovia's discrimination of Mr. Altomare.

65.     As a result of the willful discrimination described above, Plaintiff suffered substantial loss of earnings and benefits and he will continue to do so in the future. Accordingly, Defendants are liable to plaintiff for both back pay and front pay in an amount as yet undetermined, mental and emotional anguish, plus interest and costs.

## THIRD CAUSE OF ACTION
### (Age Discrimination Under the New York City Human Rights Law against all Defendants)

66.     Each of the foregoing allegations is incorporated herein by reference.

67.     Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

68.     Upon information and belief, Defendants are "employers," or employees or agents thereof, subject to the provisions of the New York City Human Rights Law under § 8-107 of the New York City Administrative Code.

69.     By their actions detailed above, Defendants denied Plaintiff a promised promotion and terminated him on the basis of his age in violation of the New York City Human Rights Law.

70.     As a result of the discrimination described above, Plaintiff has suffered substantial damages, including emotional distress and mental anguish, in an amount to be determined at trial.

71.     Defendants' actions in refusing to give Plaintiff his promised promotion and then terminating him on the basis of his age were taken with reckless indifference to Mr. Altomare's rights, entitling him to punitive damages under the New York City Human Rights Law.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit against Wachovia)

72.     Each of the foregoing allegations is incorporated herein by reference.

73.     Plaintiff provided valuable services to Wachovia in 2008.

74.     Wachovia accepted and benefited from Plaintiff's services.

75.     Plaintiff reasonably expected to be paid beyond his base salary for such services and efforts and Wachovia was aware of this fact.

76.     Notwithstanding the foregoing, Wachovia failed to pay Plaintiff any bonus compensation for 2008.

77.     Accordingly, Plaintiff suffered damages, and Wachovia should be required to pay Plaintiff the reasonable value of the services he provided to the firm during the year 2008.


WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

A.     On the First Cause of Action against Wachovia, back pay and front pay in amounts to be determined at trial, compensatory damages, liquidated damages, attorneys' fees, costs and interest;

B.     On the Second Cause of Action against all Defendants, back pay and front pay in amounts to be determined at trial, compensatory damages, costs and interest;

C.    On the Third Cause of Action against all Defendants, back pay and front pay in amounts to be determined at trial, compensatory damages, punitive damages, attorneys' fees, costs and interest;

D.    On the Fourth Cause of Action against Wachovia, compensatory damages, in an amount equal to the reasonable value of the services provided by plaintiff, costs and interest; and

E.    Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: November 20, 2009
New York, New York

Respectfully submitted,

LIDDLE & ROBINSON, L.L.P.

Jeffrey L. Liddle
James W. Halter
800 Third Avenue, 8th Floor
New York, NY 10022
Tel: (212) 687-8500
Fax: (212) 687-1505
*Counsel for Plaintiff*

14

# EXHIBIT A

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Gerald Altomare**<br>**792 Dakota Trail**<br>**Franklin Lakes, NJ 07417** | From:  **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2009-00776** | **Katherine Greenfield,**<br>**Investigator** | **(212) 336-3762** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*(signature)*

Spencer H. Lewis, Jr.,
Director

10/22/9
*(Date Mailed)*

cc:  **WACHOVIA CORPORATION**
**Employee Relations & Compliance**
**100 North Main Street**
**Winston Salem, NC 27101**

**Jeffrey L. Liddle, Esq.**
**800 Third Avenue**
**New York, NY 10022**

Enclosure with EEOC
Form 161-B (3/98)

**INFORMATION RELATED TO FILING SUIT**
**UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***
